UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARTHA BANKS,

       Plaintiff,     **REPORT AND RECOMMENDATION**

  -against-

                06 Civ. 1428 (KMK) (GAY)

MICHAEL J. ASTRUE,[1] Commissioner
of Social Security,

       Defendant.
--------------------------------------------------------X

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

Plaintiff Martha Banks commenced this action pursuant to 42 U.S.C. § 405(g), challenging the decision by the Commissioner of Social Security ("the Commissioner") to deny plaintiffs application for disability insurance benefits on the ground that plaintiff was not disabled. Presently before this Court are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons that follow, I respectfully recommend that the case should be remanded to the Commissioner of Social Security for further findings.

**I. BACKGROUND**

Plaintiff was born on February 26, 1959. She left school before completing the tenth grade. From July 1987 to May 1994, plaintiff was employed as a caretaker at an estate. Her caretaker duties required her to walk for three hours a day, stand for four hours a day and lift and carry dishes weighing less than ten pounds. She was also

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue, the current Commissioner of Social Security, has been substituted as the defendant in this action.

employed for three months in 1994 as an inspector at a laminates company. Plaintiff has not been employed since.

Plaintiff alleges that she is disabled from work due to a number of illnesses, including Graves' disease (a thyroid disorder), mitral valve prolapse, hypertension, muscle and joint pain, asthma and anxiety disorder. The record indicates that plaintiff first sought treatment for her complaints in 1996. Plaintiff received treatment from several physicians from 2000 until the time of her application, including Dr. Ediale, an endocrinologist, who treated plaintiff from April 2002 through April 2005.

On July 20, 2000, plaintiff applied for disability benefits[2] but her application was denied on initial administrative review. On September 20, 2001, pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ"). On September 25, 2001, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act ("SSA") and, therefore, was not entitled to disability benefits. On June 26, 2003, the Appeals Council granted plaintiff's request for review, vacated the ALJ's decision below and remanded the case for further proceedings. The ALJ conducted a supplemental hearing on April 25, 2005; on May 20, 2005, having considered plaintiff's claim *de novo*, the ALJ issued a written decision in which he again found that plaintiff was not entitled to disability benefits. Said decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 23, 2005. This action followed.

## II. STANDARD OF REVIEW

The Commissioner's factual findings are conclusive if they are supported by

---

[2] Her application was assigned a protective filing date of May 25, 2000.

substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quotation and citation omitted). The reviewing court "may only set aside a determination which is based upon legal error or not supported by substantial evidence." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998) (quotation and citation omitted).

## III. STATUTORY DISABILITY

The SSA defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). In addition, a person is eligible for disability benefits under the SSA only if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Second Circuit has adopted a five-step analysis for evaluating disability claims under the SSA:

3

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). In determining whether there is other work which the claimant could perform, "the Commissioner must consider four factors: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quotation and citation omitted).

## IV. ALJ'S DETERMINATION

Here, the ALJ applied the five-step procedure and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since protectively filing her SSI application on May 25, 2000. At step two, the ALJ determined that plaintiff suffered from the following "severe" impairments: Grave's disease, hyperthyroidism, anxiety disorder, history of asthma and mitral valve prolapse, and mild cerebral and cerebellar atrophy with resultant memory deficits. At step three, the ALJ concluded that plaintiff did not have an

4

impairment or combination of impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P.

At step four, the ALJ found "no contraindication to the performance of light work" based "in large part on the outpatient treatment notes from Middletown Medical, P.C., which . . . [did] not reflect significant physical abnormalities. Specifically, the ALJ stated:

> In reaching this conclusion, the undersigned is aware that the claimant testified to multiple joint and muscle pain and claimed that she can sit for a maximum of 30 minutes at one time, stand for a maximum of 10-15 minutes at one time, walk for a maximum of 1 block at one time, and lift/carry 5 pounds or less. Likewise, the undersigned is aware that a current treating physician, Dr. Ediale opined that the claimant can sit for only 2 hours and stand/walk for less than 2 hours in an 8-hour workday, and can rarely lift/carry 10 pounds. However, the claimant's testimony and Dr. Ediale's opinion are inconsistent with the evidence of record as a whole which instead supports a greater ability to function. Therefore, neither the claimant's testimony nor Dr. Ediale's opinion is afforded great weight.

Also at step four, the ALJ considered plaintiff's mental impairment and found that plaintiff has "moderate limitations with regard to maintaining concentration, persistence, or pace, . . . ." The ALJ also "agree[d] with Dr. Ediale's opinion that the claimant could probably not handle jobs that require detailed or complicated tasks." Ultimately, the ALJ concluded at step four that plaintiff did not retain the residual functional capacity to perform her past relevant work as a caretaker.[3]

At step five, the ALJ asked a vocational expert "to consider an individual who could do light work from an exertional standpoint, who had mild to moderate memory deficits, and who could not be exposed to bad air." The vocational expert opined that

---

[3] The ALJ noted that plaintiff's job as a laminates inspector lasted only two or three months and, thus, is not considered "relevant" within the meaning of 20 C.F.R. 416.965.

5

such a person would be able to work as an assembler, office helper and school bus monitor. Based upon additional testimony from the vocational expert, the ALJ found that said jobs exist in significant numbers in the national economy. The ALJ concluded, therefore, that plaintiff was not under a "disability" as defined in the SSA.

## V. ANALYSIS

### A. Credibility of Plaintiff's Subjective Complaints of Pain

The ALJ found that plaintiff's testimony as to her pain and functional limitation was not credible because it was inconsistent with "the evidence of record as a whole which instead supports a greater ability to function." Plaintiff argues that the ALJ failed to assess her credibility and evaluate her subjective complaints of pain properly.

It is within the ALJ's discretion to evaluate plaintiff's credibility "and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Pardilla v. Apfel, No. 98 Civ. 5357, 2000 WL 145463, at *6 (S.D.N.Y. Feb. 9, 2000). However, "[i]f the ALJ decides to reject subjective testimony concerning pain and other symptoms, [he] must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [his] determination is supported by substantial evidence." Lugo v. Apfel, 20 F. Supp.2d 662, 663 (S.D.N.Y. 1998) (quotation and citations omitted). In order to satisfy the substantial evidence requirement,

> the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments could reasonably be expected to produce the pain or other symptoms alleged. Second, if the medical evidence alone establishes the

6

existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

Brodbeck v. Astrue, No. 5:05-CV-0257, 2008 WL 681905, at *19 (N.D.N.Y. Mar. 7, 2008) (citing 20 C.F.R. §§ 404.1529(a),(c), 416.929(a),(c)) (other citations and internal quotations omitted).

Here, the ALJ failed to assess plaintiff's testimony regarding her pain and functional limitations in accordance with the guidelines set forth above. The ALJ failed to set forth with specificity his reasons for doubting plaintiff's credibility and to explain the weight accorded plaintiff's statements. The Court, therefore, cannot determine whether the ALJ had legitimate reasons for rejecting plaintiff's subjective testimony and whether his determination was supported by substantial evidence. See Brandon v. Bowen, 666 F. Supp 604, 608-09 (S.D.N.Y. 1987) ("[T]he ALJ merely stated, with regard to plaintiff's testimony as a whole, that 'claimant's allegations of experiencing pain are not consistent with a preponderance of the evidence and are not credible' . . . . The Court cannot discern from this conclusory statement whether the ALJ's determination is based on substantial evidence."). Accordingly, I respectfully recommend that this case be remanded to the Commissioner of Social Security to set

forth with sufficient specificity the reasons why plaintiff's testimony as to her pain and functional limitation is not credible.

### B. Treating Physician Rule

At step four, the ALJ did not afford "great weight" to Dr. Ediale's opinion regarding plaintiff's limitations because it was "inconsistent with the record as a whole which instead supports a greater ability to function." Plaintiff contends that the ALJ did not accord proper weight to Dr. Ediale's opinion.

It is well-settled that the ALJ must give controlling weight to the opinion of a treating physician if it is well-supported by the medical record and is not inconsistent with other substantial evidence. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Pursuant to the regulations, the ALJ must consider the following factors when assigning weight to the opinion of a treating source: (1) the length, nature and extent of treatment and the frequency of examination; (2) the relevant evidence presented by the treating source in support of his opinion; (3) whether the opinion is consistent with the record as a whole; (4) whether the treating source is a specialist in the area relating to his opinion; and (5) other factors which tend to support or contradict the opinion. See Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2)-(6).

Here, the ALJ acknowledged that Dr. Ediale was a treating physician; however, in assigning weight to Dr. Ediale's opinion, the ALJ apparently considered only one of the factors set forth in the regulations–whether Dr. Ediale's opinion is consistent with the record as a whole–and failed to consider the remaining factors. Because the ALJ failed to apply the factors properly, it is impossible to assess whether Dr. Ediale's opinion was

8

properly rejected. Accordingly, I respectfully recommend that this case be remanded to the Commissioner of Social Security to set forth with sufficient specificity the factors that were applied in determining the amount of weight given to Dr. Ediale's opinion.

C. <u>Residual Functional Capacity Assessment</u>

Plaintiff further argues that the ALJ failed to properly evaluate plaintiff's residual functional capacity ("RFC"). In assessing RFC,

> the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1). Only after that analysis is completed, may RFC be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.

Brodbeck, 2008 WL 681905, at *7 (citation omitted). See S.S.R. 96-8p, 1996 WL 374184, at *1. Further,

> [t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing bases (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

S.S.R. 96-8p, 1996 WL 374184, at *7.

Here, at step four, the extent of the ALJ's discussion regarding plaintiff's exertional limitations is as follows:

> From an exertional standpoint, in light of the claimant's history of Grave's disease and hyperthyroidism, the undersigned believes it is unrealistic for the claimant to perform work requiring heavy lifting or strenuous physical exertion. However, the undersigned sees no contraindication to the performance of light work (20 CFR § 416.967(b))

9

> on a sustained basis. Such conclusion is based in large part on the outpatient treatment notes from Middletown Medical, P.C. which covers the period through November 2004 and do not reflect significant physical abnormalities.

Said findings fail to provide a function-by-function assessment of plaintiff's exertional capacity and do not satisfy the narrative discussion requirement. The Court, therefore, has no basis upon which to determine whether the ALJ's finding that plaintiff had the RFC for light work is supported by substantial evidence. Accordingly, I respectfully recommend that this case be remanded to the Commissioner for further proceedings.

### D. Burden at Step Five

Plaintiff also contends that, although the vocational expert testified that jobs existed in the national and regional economy that plaintiff could perform, the expert's opinion was based upon hypotheticals which failed to reflect all of plaintiff's impairments and limitations. "When the testimony of a vocational expert is utilized, as here, the ALJ must present a hypothetical that incorporates all of [p]laintiff's impairments. If the ALJ fails to pose hypothetical questions that include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Brodbeck, 2008 WL 681905, at *18 (internal quotations and citations omitted).

Here, the ALJ's decision states that he asked the vocational expert "to consider an individual who could do light work from an exertional standpoint, who had mild to moderate memory deficits, and who could not be exposed to bad air." In the first instance, as discussed above, the ALJ failed to provide a function-by-function evaluation of plaintiff's RFC; thus, the hypotheticals posed to the vocational

expert–based upon the flawed RFC–may not have accurately reflected plaintiff's exertional limitations. In any event, the ALJ's hypotheticals to the vocational expert did not incorporate all of the ALJ's findings regarding plaintiff's limitations. In evaluating plaintiff's non-exertional limitations at step four, the ALJ found that plaintiff had "moderate limitations with regard to maintaining concentration, persistence, or pace" and that she "could probably not handle jobs that require detailed or complicated tasks." The ALJ's hypotheticals failed to incorporate either finding. Accordingly, I respectfully recommend that this case be remanded to the Commissioner for further proceedings to determine the availability of jobs in the national and regional economy based upon revised hypotheticals which accurately reflect plaintiff's impairments and limitations..

## VI. CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that plaintiff's motion for judgment on the pleadings should be granted to the extent it seeks remand to the Commissioner for further proceedings in accordance with this Report and Recommendation, and the Commissioner's cross-motion should be denied.

## VIII. NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of

serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.

Dated: May 28, 2008
White Plains, New York

Respectfully Submitted,

GEORGE A. YANTHIS, U.S.M.J.